Good afternoon, counsel. Good afternoon, Judge Rawlinson, Judge Gould, and Judge Fischer. May it please the Court, my name is Joan Fischer. I represent Gerald Ross Pizzuto, Jr., an intellectually disabled offender sentenced to death some 32 years ago in the state of Iowa. The question before the Court today is the impact of Hall and how it affects the original decisions by both the Idaho Supreme Court and primarily the original decision of the District Court in finding that 2254D prohibited federal review of the Idaho Supreme Court decision. Hall v. Florida is not new law. It does not expand the law. It does not extend the law. It does not make any new law. It simply enforces Atkins v. Virginia. Atkins v. Virginia made clear that it is constitutionally impermissible to execute a person who suffers from intellectual disability. As the Court in Atkins noted, the procedures brought into effect by the states were left to the states, but they had a constitutional minimum floor. Just as Panetti many years after Ford laid that constitutional floor or made clear that constitutional floor, Hall makes clear the constitutional floor is still and always was that it is impermissible to execute the intellectually disabled. So, counsel, if Hall did not create any new law, why should we change the outcome of this case then? Because if Hall didn't create new law and we had already determined that the Idaho Court did not act unconstitutionally, then what has changed then? What Hall did was it made clear that the decision by the District Court that the Idaho Supreme Court was reasonable and was not contrary to existing law was incorrect. Why? Not incorrect. It was clearly contrary to the decision in Atkins v. Virginia. It's our position and has been our position since 2003 that Atkins v. Virginia controls this case. So your argument is the same argument that was made when we were here before, essentially? Essentially the same, Your Honor. Though what Hall does add is a Supreme Court imprimatur on the concept that intellectual disability must be determined within a medical framework, that the States do not have unfettered discretion to define. But the State didn't exercise unfettered discretion. The State, like Hall, did in fact impose a Bright Line 70 or below IQ score. So where in the record can you point to where the State relied solely on the Bright Line rule? The Idaho Supreme Court says in its decision that, quote, the 1925-15a, the intellectual disability statute in Idaho that was enacted after Atkins, it says that it requires an IQ score of 70. It did not require a score of 70 plus or minus 5. Within the decision itself, they later, and this is probably where some of the confusion comes in, they later talk about the SEM of a plus and minus 5. So they say, because we argued, obviously, that the definition of intellectual disability mandated application of the standard error of measurement, which is a plus or minus 5 points. The court, the Idaho Supreme Court, then dismissed that argument, first because it wasn't, because they relied on a Bright Line rule, and secondly because they found that if there was a plus or minus 5 standard of error measurement, it was then within the authority or the ability of the court to make a reasonable inference on where on that 10-point range of the SEM Mr. Pezzuto fell. Mr. Pezzuto, he had a — what was his IQ? Was it 72? The IQ presented to the Idaho Supreme Court was a 72, yes, Your Honor. Right. And so — Ma'am? Yes, sir. Could I note that Hall cites Pezzuto as an example of a state who is within the medical guidelines of Atkins? That is correct, Your Honor, and the United States Supreme Court was incorrect in that citation. Well, but wait a minute. I'm sorry, go ahead. But if the Supreme Court is saying that the case was in the parameters, are we to disregard that? Yes, because the — both the majority and the dissent cite Pezzuto as a reason for their position. The Idaho Supreme Court — the United States Supreme Court simply referenced the fact of the — the Idaho Supreme Court's notation of the standard of error measurement. But the Idaho Supreme Court, if it did apply, and both parties have agreed it did not apply, the State of Idaho represent — in an amicus represented to the United States Supreme Court that the Idaho Supreme Court in fact had a bright-line rule. So what it was was a misunderstanding of a long list of States and their statutes. What the Idaho Supreme Court did with the standard of error measurement, assuming that they understood it to be part of the definition, though they did not What they said was they could reasonably infer from the district court's summary dismissal of the claim that the district court found that Mr. Pezzuto — Mr. Pezzuto's IQ was above 70 on that range. The district court here made the similar mistake by saying that there — we have a range Hall says we have to consider the range, but once we have the range, it's a matter of fact where in the range the IQ lies. Why is that not a matter of fact? Because it's outside the realm of the medical framework for intellectual disabilities. So how is it to be determined? It's to be — the IQ score is evidence of what the prong actually requires, which is sub-average intellectual functioning. If you have an IQ score within the range of 70 to 75, then you assume — then you are within the range of the IQ requirement. But who makes that determination? Who makes that determination, then, under your view? Who makes the determination whether or not the individual is within the range? Whether they're in the range is a matter of fact. Okay. Then who makes the determination based on the range, who makes the determination whether or not they are intellectually disabled? Well, the fact finder — Somebody has to make the determination. Right. The fact finder makes the determination. The judge. The judge makes the determination. The judge may — depending on the State statute. In this case. But in this case, the judge would. But the judge, the trial judge, made no finding. He simply said there was no issue of material fact and it was untimely filed. The Idaho Supreme Court came back and said, well, we could look at that decision as meaning that there was a reasonable inference that he has higher than a 70. But that's not — that's not within the medical framework. The medical framework says if you're within the range, then you've satisfied that portion of the evidentiary issue of sub-average intellectual functioning. What case is that? What case is that? That is Hall v. Florida, Your Honor. And that's the crux of Hall is that it doesn't dictate that the states are obligated to follow every nuance and every change in medicine, but they are obligated to be educated and to apply that framework. And in the matter of Hall, they said clearly the clinical definitions of intellectual disability were a fundamental premise of Atkins, and that included the SEM. So in this case, the Idaho Supreme Court was clearly contrary to Atkins in its failure to understand the SEM and its application. Ginsburg. Counsel, did you want to address the disclosure of Dr. Beaver's testing? Well, Your Honor, I've disclosed — I've disclosed that. I've certainly addressed that in my briefing, but I will talk about the difficulty with — the difficulty with Dr. Beaver's situation. Dr. Beaver clearly was a defense witness. He was a non-testifying expert witness. He was not — he should not have been disclosed. It is very difficult, and I understand the court's position. It's very difficult to put that cat back in the bag. But it was contrary to the rules of evidence. It was an invasion of the defense, and it was — and it led to a confusion in this case that was unnecessary, because Dr. Beaver at all times recommended further testing to determine whether or not Mr. Pizzuto suffered from intellectual disability. He believed, based on his neurological assessment some years before and interviews, that, in fact, Mr. Pizzuto did meet all three crimes. But, counsel, I don't understand. Do you agree that your client relied on Dr. Beaver's affidavits to support his claim of intellectual disability? He did not. I mean, well, here's — let me — I want to rephrase that, Judge, because it's clearly an unusual circumstance that occurred, because Dr. Beaver gave us an affidavit. Were those proper? In which he said, I believe that based — I believe that Gerald Pizzuto likely meets the standards of Idaho Code 1925-15. So we did — when we filed the petition, we had an — we had not only Dr. Emery's IQ score of 72 and a plethora of affidavits that supported adaptive deficits, we also had Dr. Beaver's opinion that he likely met that standard. But he didn't say for sure he did. And he always — But even if he didn't say for sure, do you disagree that his affidavit was proffered in support of the proposition that your client met the — It was originally proffered in support of the petition. Absolutely. So I don't understand why it would be an invasion to delve into his testing if his affidavit was offered in support. Because once — once Dr. Beaver alerted the defense that he had found what he did not know had occurred, a test, an IQ test of Mr. Pizzuto, we ceased using Dr. Beaver. I mean, we never intended to use Dr. Beaver as a testifying witness. You know, there's two premises here. There's the filing of a petition that supports an allegation, and then there's the evidence that you proffered to support it. When we filed for the motion for summary judgment, when we asked for additional testing, when we asked for a hearing, we did not rely on that affidavit. So that — and I think the law is fairly clear that even if you at one time rely on the expert, once you determine that it's going to be a non-testifying expert, you're not obligated to disclose that. What case are you relying upon? Your Honor, I — you know, I don't have it. I believe I've cited in my brief. If I have not, I will certainly supplement. All right. Did you want to save some time for rebuttal? I do, Your Honor. I would — I would like to say just one other thing that I haven't gotten to yet, and that's that the fact that Hall is not new law is fortified by two other decisions that have come down by the United States Supreme Court since Hall, Brumfield v. Cain and Moore v. Texas. In Moore, the United States Supreme Court made clear that the adaptive deficits and the interrelated and conjunctive assessment requires — is required to be within the medical framework as well as the IQ and the subaverage intellectual functioning, so that when you take that trio of cases, it becomes very clear that the United States Supreme Court was not making new law, but was simply explaining how the law of Atkins had not been appropriately enforced. In this case, the district court, in following the — in following the Idaho Supreme Court's lead, made similar errors in application of medical facts that render his decision, de novo, as erroneous as the Idaho Supreme Court's decision. So, counsel, at page 716 of Hall, there was a naming of all the states that have a strict IQ score cutoff of 70. Was Idaho listed in there? I don't have the case in front of me, Your Honor, but Pazuta was cited twice in the — in Hall. No, but I'm asking you about at 716, the court seems to be talking about the statutes that — oh, you're saying the statute's been changed? No. I'm saying that the United States Supreme Court, in reading the statute and in apparently very quickly reading the Pazuta decision, determined that it was not a Brightline 70 — 70 case. Right. Even if the United States Supreme Court is correct, and I assert that it is not, the majority opinion is not, the dissenting opinion is correct, even if it is correct, the application of the SEM was equally violative of Atkins because it was applied in a way that totally skewed the fact-finding and deprived Mr. Pazuta of his right to be a judge in the execution. I thought the Hall court was looking at the Supreme — at the Idaho court's application of the statute in conjunction with the language of the statute to say that there was no Brightline rule. Well, like Hall, it is true that like Hall, the State of Idaho's definition of intellectual disability can be interpreted constitutionally under Hall or unconstitutionally. Okay. But you're saying that it was interpreted unconstitutionally. Correct. All right. Thank you, counsel. Thank you, Your Honor. Good afternoon, counsel. Good afternoon, Your Honor. Lamont Anderson for the Respondent, Randy Blades. The real question before this Court is, in fact, the impact of Hall upon the Idaho Supreme Court's decision. And the impact is significant.  The impact of Hall is significant. It doesn't exist for two reasons. Primarily because Hall was decided well after the Idaho Supreme Court issued its decision in Pazuto. And secondly, because it doesn't change the outcome because the Idaho Supreme Court actually applied the SEM that was mandated in Hall. First off, the holding of Atkins. Let's look at two recent decisions from the United States Supreme Court that I cited in our supplemental authorities. Virginia v. LeBlanc discussed Graham v. Florida, where the Florida Supreme Court determined that Virginia's geriatric release program did not provide, actually, a meaningful opportunity for juvenile non-offender, non-homicide offenders to obtain release based upon demonstrated maturity and rehabilitation. Now, the Court looked at Graham, and the Court said, that isn't what we said in Graham. We said this, and what this Court has done is expanded it. Now, compare that also with what happened in Atkins and Hall. Atkins only required the three general criteria demanded by the medical community. And that is the IQ of 70 or below, plus or minus five points, the SEM. Secondly, the intellectual, excuse me, the, and I can't remember the name of it now, the way they act and onset before age 18. There was nothing, there was nothing in Atkins that talked about the SEM. Counsel, let me ask you this. Do you agree with opposing counsels that Hall is not new law? I do not, Your Honor. It is new law. It expanded Atkins. How did it expand Atkins? Because Atkins said nothing whatsoever about how the States were supposed to implement this three-pronged criteria. Why wasn't that just a clarification? Well, but if you look at the decisions of the United States Supreme Court on what constitutes clearly established Federal law, a mere expansion, a clarification of whatever is not clearly established. And that's why I cited in our supplemental authorities Virginia v. LeBlanc and Dunn v. Madison. Dunn v. Madison was an incompetency case where the lower court tried to expand Ford v. Wainwright. And, of course, that's important because in Atkins the Court said we're going to leave to the States the issue of implementation just like we did in Ford v. Wainwright. And the United States Supreme Court came back and said neither Panetti nor Ford clearly established that a prisoner is incompetent to be executed because of a failure to remember his commission of the crimes as distinct from a failure to rationally comprehend the concepts of crime and punishment as applied in this case. Counsel, if we disagree with you regarding your characterization of Hall as new law, do you lose? No, Your Honor. Why not? And the reason that the State does not lose is because if you look at the Idaho Supreme Court's decision, and this is found on page 651, Pacific Seconds, 651, the Court is talking about Pizzuto's contention that his IQ score is only accurate within 5 points. He contends his actual IQ could have been 5 points lower or higher than 72. And the Supreme Court came back and said there's two problems with this. The first is that when enacting 1925.15a, the legislature did not require the IQ score to be within 5 points of 70 or below. It required it to be 70 or below. Now, that's where the district court stopped. And that's why the district court was wrong in its decision regarding that aspect of the Idaho Supreme Court's decision. Because the court went on and said the court could just as reasonably have inferred that it was higher. The alleged error in IQ testing is plus or minus 5 points. The district court was entitled to draw reasonable inference from the undisputed facts. The facts that were presented were undisputed because Pizzuto filed a motion for summary judgment and said this is the evidence that we rely upon, are relying upon to establish my client's IQ and the other two prongs of, of, that are required under Atkins. It is that particular section of the Pizzuto opinion that the United States Supreme Court relied upon in Hall in concluding that Idaho is not a bright-line State and which was reaffirmed by Justice Sotomayor in, in Moore. When particularly in Moore, the court came back and said the Idaho Supreme Court will allow additional evidence to be presented. Well, if you can allow additional evidence to be presented as articulated in the Pizzuto decision and as articulated by the United States Supreme Court, it can't possibly be a bright-line rule. And it's not. It's just not. As I, as I indicated, the, the court actually considered the SEM in that particular paragraph. The court considered all of the evidence that was presented regarding both the IQ score and the onset. The court considered, meaning the Idaho Supreme Court, Dr. Marikangas's notes, Dr. Beaver's 1996 conclusion, Dr. Beaver's 2004 opinion. Irrespective of how this Court decides this case, if it decides that Hall did not create new law and was premised upon Atkins, the Idaho Supreme Court complied with it. And that was the decision also of the, of the district court. If I could take just a minute to look at my notes. Did you want to address the challenge that was made to consideration of Dr. Beaver? I'd be happy to, Your Honor.  I looked at Dr. Beaver's affidavits, his opinions, and everything that he had done. And I have to assume, and I think it's proper to assume, that those opinions, that those affidavits were based upon his 1996 testing, that were presented not only to the Idaho Supreme Court, but it's my recollection it was part and parcel of the successive habeas petition. But we know for a fact it was presented to the Idaho Supreme Court, how the state was not entitled to that information. That was the basis. There were two bases, really, for the determination regarding Pizzuto's IQ. And for that matter, the, yeah, I'll leave it at IQ. It was Dr. Emory's reports and his testimony at sentencing where Dr. Emory said Pizzuto's IQ was, and I think it was a verbal IQ, it was only one prong of the ways, was 72, but it was his opinion that it was significantly higher. Or higher, I should be careful in saying significantly. And then there was Dr. Beaver's affidavits. That was their evidence. That was the undisputed evidence that was presented to the Idaho, to the trial court and to the Idaho Supreme Court. To say that the State is not entitled to that because all of a sudden Dr. Beaver is not going to testify in Federal court just defies fundamental fairness. We had no reason in 1996 to request Dr. Beaver's information because, of course, Atkins hadn't decided. And that seems to be one of the premises that Mr. Pizzuto makes, is that we could have gotten it back then. Well, maybe, maybe not. I'm not entirely sure how we were going to get the underlying testing when the underlying testing itself was not presented to the trial court, but the affidavits were presented. You had to file a motion for discovery in Idaho in post-conviction cases. The probability of us getting that underlying testing was simply not going to be very great, even if we had a reason to have sought that. And at that particular point, we didn't. I would submit that, as did the district court, that this clearly falls under the judicial arena exception to the rules of discovery. I am aware that this Court has not particularly gone into that area, but I am also unaware of any circuit that has addressed the issue that has not applied the exception. It is certainly the majority rule. And the district courts of this circuit have certainly applied it. I have a severe problem with the notion that we were not entitled to that information. Unless the Court has additional questions, I'll rely upon my brief for the remainder of our arguments and ask this Court to affirm. Any questions, Judge Gould?  Judge Fischer? No questions here. No, thank you. Thank you, Your Honor. There is not. Thank you, counsel. Rebuttal? Thank you, Your Honor. The district court was not wrong when it found that Idaho was a bright-line rule, because the State of Idaho told the judge that Idaho had a bright-line rule. But does the inquiry stop there? Don't we look at the entirety of the process that was used? I think that's what the Supreme Court told us in Hall, is that we look at the entirety of the process that was used to determine whether or not there was a violation of clearly established law. Of course we do. But Hall does not stand solely for the proposition of a bright-line rule of 70. If you go to the Idaho Supreme Court's handling of the SEM, it was clearly a violation or a total disregard of the medical standards. It is a range. It is not a number. The court and the district court made the exact same mistake. When it found at page 19 in its original decision, a person who receives a full scale of 70-2 on a test may have an actual IQ. That test is as low as 67 or as high as 77. And where on this continuum the most likely score lies is a question of fact to be decided on the evidence. It is not a question of fact to be decided. It is a range, not a number. And the district court's failure to understand that medical standard, along with the Idaho Supreme Court's inability to understand it, permeates the findings that Mr. Pizzuto was not intellectually disabled or is not intellectually disabled. Your Honor, we can look at the findings of fact made by Judge Reinhart when he found that the fact that Mr. Pizzuto was unintelligent based on Dr. Emory's findings of a 72 and borderline intellectual functioning, and that the judge found that he couldn't abstract, he couldn't reason, he couldn't control his behavior. He basically finds all of the attributes that Atkins finds compelling to provide the protection that the courts don't want to provide because unintelligence means you can't change. And so Judge Reinhart took it as an aggravator. That's why Atkins had to set the floor. And that floor has been bashed in this case. Finally, Your Honor, I'd just like to say that the Supreme Court's inference of ongoing drug use and epilepsy somehow made it reasonable not to take into consideration the adaptive deficits as evidence of pre-18 onset was equally unreasonable and a violation of Hall and Moore. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for a decision by the court, and we are adjourned.
judges: Fisher, Gould, Rawlinson